**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

DeWitt Rehabilitation and Nursing Center, Inc.,   :

                                        :

              Plaintiff,           :

                                          :       11-CV-6826

       -against -           :

                                          :

Columbia Casualty Company, HUB International  :      **MEMORANDUM**
NE, Ltd., Lewis & Clark LTC Risk Retention     :      **OPINION AND**
Group,                                    :      **ORDER**

                                         :

            Defendants.         :

_____ :

Richard J. Holwell, District Judge:

On September 29, 2011, defendant Columbia Casualty Company ("CCC") moved this Court (ECF docket no. [1]) to withdraw an adversary proceeding filed by DeWitt Rehabilitation and Nursing Center, Inc. ("DeWitt") in DeWitt's bankruptcy case 11-10253-ALG (Bankr. S.D.N.Y.) before the honorable Judge Allan Gropper. Co-defendants Lewis & Clark LTC Risk Retention Group ("L&C") and HUB International NE, Ltd. ("HUB") each cross-moved (ECF docket nos. [11], [17]) for the same relief. For the reasons below CCC's motion and HUB's and L&C's cross-motions are GRANTED.

*Background*

On or around May 5, 2010, Fermina Garcia allegedly fell and sustained injuries while a resident/patient at Dewitt's nursing home. (Plaintiff's Brief in Opposition to the Defendant's Motions to Withdraw the Reference ("DeWitt Mem.") at 3.) On May 23, 2011, a negligence action against DeWitt (hereinafter the "Garcia action") was commenced in New York County

Supreme Court by her estate. (*Id.*) Because DeWitt had filed for Chapter 11 bankruptcy on January 25, 2011, the Garcia action was automatically stayed (*Id.* at 4.)

On August 17, 2011, DeWitt initiated an adversary proceeding in the bankruptcy court against its past liability carrier CCC, its present liability carrier L&C, and the successor of its insurance agent at the time of the fall HUB. (*Id.* at 4-5.) DeWitt seeks declaratory judgment as to who should indemnify DeWitt for claims arising from Ms. Garcia's fall.

Basic factual and contract disputes underlie DeWitt's adversary proceeding. DeWitt claims that it alerted its insurance agent Hirsch Wolf, now HUB, of Ms. Garcia's fall on April 9, 2010, (November 16, 2011 Declaration of Harvey Weinberg in Opposition to Defendant's Motion to Withdraw the Reference of the Adversary Proceeding ("Weinberg Dec.") Ex. 4), and therefore that CCC, its liability carrier from January 7, 2010 to January 7, 2011, must indemnify DeWitt in the Garcia action. (DeWitt Mem. at 5.) CCC claims it never learned of the incident until it received a fax from HUB on June 1, 2011, (September 29, 2011 Declaration of Lisa Sharon Shreiber in Support of Motion to Withdraw the Bankruptcy Reference ("Schreiber Dec.") at 2), and that its contractual liability policy with DeWitt precludes coverage for incidents reported outside the policy period. (Memorandum of Law in Support of Defendant Columbia Casualty Company's Motion to Withdraw the Reference of the Adversary Proceeding ("CCC Mem.") at 4-5.)

In a letter from HUB to CCC, HUB appears to concede that it did not initially report the incident to CCC because "it was just part of an Incident report stating that the claimant had a bump and redness on the knee." (*See* Weinberg Dec. Ex. 3.) Accordingly, in the adversary proceeding DeWitt also seeks indemnification from HUB for the Garcia action under a negligence claim. (DeWitt Mem. at 5.)

Finally, DeWitt alleges in the adversary proceeding that L&C must also indemnify DeWitt under a retroactivity clause in its present liability policy. *Id.* In response, L&C argues that its policy "does not apply to any claim that any insured knew about or could have reasonably discovered or foreseen prior to the first date continuous coverage was written" by L&C. (Memorandum of Law in Support of Defendant Lewis & Clark LTC Risk Retention Group's Motion to Withdraw the Reference of the Adversary Proceeding ("L&C Mem.") at 3.)

On September 29, 2011, CCC moved this Court to withdraw the adversary proceeding from the bankruptcy court. L&C and HUB cross-moved for the same relief on October 17 and 28, respectively. DeWitt filed opposition papers on November 16. CCC and L&C each replied on November 22, and HUB replied on November 23.

*Standards*

The procedure for withdrawing a reference is provided for by Federal Rule of Bankruptcy Procedure 5011(a) (1991), which states that "[a] motion for withdrawal of a case or proceeding shall be heard by a district judge." Withdrawal of the reference from a bankruptcy court is governed by 28 U.S.C. § 157(d) (2005), which provides, in relevant part, that a district court "may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."

Although section 157(d) does not define the term "cause," the Second Circuit has instructed district courts to consider whether the claim is core or non-core, whether it is legal or equitable, and whether issues of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law support withdrawal. *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095, 1101 (2d Cir.1993), *cert. denied,* 511

U.S. 1026, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994). Of these, most important is whether the claim is core or non-core. *In re Burger Boys, Inc.*, 94 F.3d 755, 762 (2d Cir. 1996).[1] However, any factor may have substantial importance in a given case, and none is dispositive. *See Northwest Airlines Corp. v. City of Los Angeles (In re Northwest Airlines Corp.)*, 384 B.R. 51, 56 (S.D.N.Y. 2008).

"Decisions in the Second Circuit are not uniform on the question of whether the district court should, in the absence of an initial determination by the bankruptcy court, decide whether a proceeding is core or non-core." *Id*. A majority of courts hold that the district court can determine, in the first instance, whether a proceeding is core or non-core. *Id.*; *Joseph DelGreco & Co. v. DLA Piper LLP*, No. 10 CV 6422(NRB), 2011 WL 350281 (S.D.N.Y. Jan. 26, 2011) (finding that "the weight of authority in this Circuit supports the proposition that a district court may make this determination in the first instance") (collecting cases).

This Court adopts the majority view, as "*Orion's* clear language refutes [any] contention that the core/non-core determination must be made by a bankruptcy judge." *V.W. Eimicke, Inc. v. Amlicke (In re VWE Group, Inc.),* 359 B.R. 441, 447–48 (S.D.N.Y. 2007); *see In re Orion Pictures Corp.,* 4 F.3d at 1101 ("A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn."); *see also Distefano v. Law Offices of Barbara H. Katsos, P.C.*, No. 10–MC–0564 (JS), 2011 WL 2446318, at *3 (E.D.N.Y. June 15, 2011)

---

[1] The Bankruptcy Code divides claims in bankruptcy proceedings into two principal categories: "core" and "non-core." *See* 28 U.S.C. § 157. "Bankruptcy judges have the authority to 'hear and determine all . . . core proceedings arising under title 11 . . . and may enter appropriate orders and judgments, subject to review under section 158 of [title 28.]'" *S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 704 (2d Cir. 1995) (quoting 28 U.S.C. § 157(b)(1)). With respect to non-core claims, the bankruptcy court can only recommend findings of fact and conclusions of law to the district court. *See id.*

(adopting majority view and finding "no clear statutory basis" for precluding a district court from making the core/non-core determination in the first instance).

Whether a matter is core or non-core depends on the nature of the proceeding. *See In re Best Products Co.*, 68 F.3d 26, 31 (2d Cir. 1995). Although core proceedings are not statutorily defined, section 157(b)(2) offers a nonexclusive list of such actions. *In re Mountain View Coach Line, Inc*, 88 CIV 5385 (JFK), 1989 WL 129479, at *2 (S.D.N.Y. Oct. 27, 1989). A proceeding that involves rights created by bankruptcy law, or that could arise only in a bankruptcy case, is a core proceeding. *MBNA America Bank, N.A. v. Hill*, 436 F.3d 104, 108-109 (2d Cir. 2006); *McCrory Corp. v. 99¢ Only Stores (In re McCrory Corp.)*, 160 B.R. 502, 506 (S.D.N.Y. 1993). A claim is non-core if it "does not depend on bankruptcy laws for its existence and . . . could proceed in a court that lacks federal bankruptcy jurisdiction." *N. Am. Energy Conservation, Inc. v. Interstate Energy Res., Inc.*, 00–CV–4302 (SHS), 2000 WL 1514614, at *2 (S.D.N.Y. Oct. 10, 2000). Whether a contract action is a core proceeding or a non-core proceeding also requires consideration of "(1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization." *See Universal Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.),* 419 F.3d 83, 97 (2d Cir.2005) (internal quotations omitted).

*Analysis*

The parties' dispute is a non-core matter. DeWitt's assertion that the adjudication is "directly related to the claim of a creditor (the Garcia Estate)" (DeWitt Mem. at 10) is irrelevant to this determination. This case does not involve the question of *whether* the Garcia estate has a valid claim against DeWitt; that will be determined in the Garcia action, presently stayed. This

case determines who bears financial responsibility for any potential award arising *from* the Garcia action. This requires a straightforward analysis of DeWitt's contracts with CCC, L&C, and HUB, and basic factfinding as to the timing and adequacy of various claim notices. Such inquiries and analyses are not recited in section 157(b)(2), involve rights that exist independent of DeWitt's bankruptcy, and could easily have arisen outside of a bankruptcy court.

The Court is not persuaded by DeWitt's attempts to cast this action as inherently related to the bankruptcy proceeding. While it is true that, as DeWitt states, "the declaratory judgment action is brought in the context of Debtor attempting to secure a valuable asset (specifically the coverage of the CCC Policy)," (Pl. Mem. at 11), this does not make it a bankruptcy-related action. If faced with a lawsuit by Garcia's estate, DeWitt would need to know who insured it against Ms. Garcia's fall, whether or not DeWitt had ever filed for bankruptcy. DeWitt's reliance on *Oakley v. Drydock Coal Co.*, No. 2:06-cv-556, 2007 WL 710244 (S.D. Ohio, Mar. 6, 2007) is misplaced. The action underlying *Oakley* was to determine the true owners of securities held within the debtor's estate; this is more akin to the stayed *Garcia* action, a dispute over assets of the estate, than the present motion, which instead asks who should reimburse the estate for its legal liabilities. More importantly, the action in *Oakley* also included claims of fraudulent conveyance of the estate, core claims arising from the bankruptcy code itself. *See Oakley*, 2007 WL 710244, at *1. No such claims are raised or implicated here.

This Court is guided by the Second Circuit's analysis in *In re U.S. Lines*, *Inc.*, 197 F.3d 631 (2d Cir. 1999). In that case, over 12,000 employees of debtor U.S. Lines had filed more than 18,000 claims for asbestos related workplace injuries. U.S. Lines brought an adversary proceeding pursuant to 28 U.S.C. § 2201, seeking declaratory judgment of its rights to indemnity under insurance policies with four insurance clubs. The Circuit gave no traction to the argument

that the underlying insurance contract claims were "rendered core simply because they involve property of the estate. 'The issue [in U.S. Lines' contract claims] is the *scope* of the insurance policies, an issue of contractual interpretation, not their ownership.'" *In re U.S. Lines*, *Inc.,* 197 F.3d at 637 (quoting *In re United States Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997)). The court declined to adopt a general rule that an action is core merely because it involves property of the estate. Such a rule, the court held, "would 'create[ ] an exception to [*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) (designating traditional contract actions arising under state law as non-core)] that would swallow the rule." *Id.* Further, the Circuit noted that "the critical question in determining whether a contractual dispute is core by virtue of timing is not whether the *cause of action* accrued post-petition, but whether the *contract* was formed post-petition." *Id.* Here, DeWitt's contracts with CCC, L&C, and HUB all predate its bankruptcy filing.

The circuit court ultimately found U.S. Lines' proceeding to be "core," but only because "pay-first" provisions in U.S. Lines' insurance policies, which required U.S. Lines to satisfy claims from its own funds before seeking indemnification, would have been largely impossible to meet without allocating assets otherwise earmarked for other creditors. *Id.* at 638. Since insurance proceeds represented "the only potential source of cash available" to the personal injury claimants, declaratory judgment was necessary "to effectuate an equitable distribution of the bankruptcy estate." *Id.* at 638-39. Accordingly, the declaratory judgment action was within the bankruptcy court's core powers. The court distinguished *In re Orion Corp.* as holding that "where the insurance proceeds would only augment the assets of the estate for general distribution, the effect on the administration of the estate [is] insufficient to render the proceedings core." *Id.* at 639. The *U.S. Lines* court noted parenthetically that even the $77

million potential debt in *Orion,* which would have "ease[d] administration and liquidation of the estate," nevertheless drew too close to *Marathon*'s designation as non-core of "traditional contract action[s] arising under state law." *Id.* at 637-38.

Unlike in *U.S. Lines*, resolution of the Garcia claim is not necessary to effectuate an equitable distribution among DeWitt's other creditors. DeWitt has not alleged that it faces any other personal injury claims for which resolution of this dispute is required; the existence of such claims would be surprising, as the dispute appears to turn on an individual reporting incident. DeWitt has not represented that an award in the Garcia action, unlike the 18,000 asbestos claims in *U.S. Lines*, would absorb a major part of the DeWitt estate, or that these insurance claims represent the only potential source of cash available to the estate. Finally, assuming DeWitt met its reporting obligations, it appears likely from the undisputed facts that one of the three parties will be called on to indemnify it. As such, the bankruptcy court should be able to proceed with reorganization while accounting for any potential Garcia liability, without waiting for resolution of the indemnification matter. These distinctions render the present proceeding less like *U.S. Lines* and more like *Orion*: a non-core state law action which need not be resolved by the bankruptcy court for equitable trust administration.

While the non-core nature of DeWitt's claims weighs in favor of withdrawing the reference from the bankruptcy court, the core/non-core determination does not end the inquiry. As the Second Circuit directed in *Orion*, "once a district court makes the core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other

8

related factors." *In re Orion Corp.*, 4 F.3d at 1101.[2] These factors generally favor granting CCC's motion and L&C's and HUB's cross-motions.

As a non-core proceeding, the bankruptcy court's power will be limited to making recommendations to the District Court, which can undertake a *de novo* review of that court's findings of fact and conclusions of law before entering a final order. Such duplicate reviews of the contracts and facts are costly and time-consuming, and unnecessarily expend judicial resources.

Regarding uniformity of bankruptcy administration, Judge Gropper continues to oversee any stay of the Garcia action, protecting DeWitt's estate from unanticipated liability. Resolution of the present action will at best increase DeWitt's assets, and at worst declare them unchanged, but in any event is unlikely to affect other creditor claims, as the contractual and factual issues are unique to Ms. Garcia's fall.

Although DeWitt claims that CCC is forum-shopping by forcing the litigation to proceed in state court[3], state court would have been the only forum available to the non-diverse parties absent DeWitt's bankruptcy; DeWitt is only getting what it contracted to *ex ante*. In any event, district courts may withdraw bankruptcy references even where withdrawal will lead to remand. See, *e.g.*, *Joseph DelGreco & Co.*, 2011 WL 350281, at *5.

---

[2] Although DeWitt and CCC mention jury trials in their filings, the Court finds an analysis of this factor premature. First, DeWitt's statement that "[t]here is no request for a jury trial" ignores the fact that CCC has not yet answered the complaint in the adversary proceeding, and thus need not yet have requested a jury. CCC asserts that a jury trial "will be demanded," but obviously has not yet done so. (CCC Reply Mem. at 3). Should CCC ultimately request a jury, as a non-core matter, the bankruptcy court would be unable to preside over the jury trial without the consent of all parties, 28 U.S.C. §157(e); *In re Enron Corp.*, No. 04 Civ. 7693(RJH), 2004 WL 2912893, at *1 n.2 (S.D.N.Y. 2004), and such consent has not yet been sought or granted. Finally, as this court previously noted in *In re Enron Corp.*, a motion for withdrawal can be decided on issues of "judicial economy and efficiency" while "reserving judgment on [the right to a trial by jury] until the underlying proceedings have matured." 2004 WL 2912893, at *2 & n.3. Caution is particularly appropriate here, where no party has yet addressed whether jury-trial rights were waived in any of the underlying insurance contracts.

[3] CCC originally stated that it sought removal to this court, (*see* CCC Memo at 9), but now concedes that the case will be sent to state court, (*see* CCC Reply at 3).

Finally, unlike *In re Enron Corp*, No. 04 Civ. 7693(RJH), 2004 WL 2912893 (S.D.N.Y. 2004), this case has few if any pre-trial or managerial matters that would be better addressed by the bankruptcy court. With an apparently limited need for discovery, issues which should be largely decided on the documentary evidence, and no apparent related cases pending in the bankruptcy court, withdrawal is appropriate.


*Conclusion*

Defendants have shown "cause" for withdrawing the reference to the Bankruptcy Court. 28 U.S.C. § 157(d). Consequently, their motions for withdrawal (ECF docket nos. [1], [11], [17]) are GRANTED.

In its motion filings, DeWitt suggests but does not concede that there is no non-bankruptcy basis for federal subject matter jurisdiction in this case. The complaint lacks sufficient information to determine the diversity of the parties, likely because DeWitt did not previously need to plead diversity jurisdiction to maintain an adversary proceeding. Therefore, DeWitt is directed to show cause within fourteen (14) days why this Court should not dismiss this case without prejudice for lack of subject matter jurisdiction.


SO ORDERED.

Dated: New York, New York
       January **24** 2012

_____
Richard J. Holwell
United States District Judge


10